UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| STEVEN COFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-220-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| 435 REDDING, LLC, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the Defendants' motions to dismiss the Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]  [Record Nos. 17, 19]  The matter has been fully briefed and the Court has considered the parties' respective positions.  For the reasons that follow, the Court will grant Defendants' motions.

I.

In late 2014, Plaintiff Steven Coffman sought commercial retail space to rent for the purpose of opening a neighborhood sports bar.  Coffman became interested in a suite at Redding Centre located at 435 Redding Road in Lexington, Kentucky (the "Premises").  Coffman's attorney telephoned Defendants Smith and Kemper, the real estate agents for the property, "several times" from November through December 2014[2] in an attempt to arrange a

---

[1] Because Defendants' motion is filed pursuant to Rule 12(b)(6), the Court relies on the facts set out in the First Amended Complaint.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] In the Complaint, Plaintiff lists the date as December 2015, but this appears to be an error.  [*See* Record No. 12, p. 5]

-1-

time for Coffman to view the Premises.  In January 2015, Coffman and Kemper met so that Coffman could view the property.  During the meeting, Kemper told Coffman that demolition and redevelopment of other parts of Redding Centre was planned for April and May of 2015.  Coffman potentially could negotiate a lease, take possession of the Premises, and begin his fit-up during the redevelopment of the rest of Redding Centre in April or May.  At that time, Kemper told Coffman that the Defendants already had a signed letter of intent to lease another space in Redding Centre.  Coffman believed that tenant to be Caucasian.

On February 5, 2015,[3] the Defendants informed Coffman, through his attorney, that they had received another offer to lease the Premises.  Coffman believed this offer to be from a Caucasian individual.  On February 13, Coffman visited the premises again, along with Kemper and potential contractors, to determine the necessary fit-up costs to implement Coffman's sports bar concept.  After that meeting, Coffman engaged the services of a licensed architect to develop floor plans and conceptual drawings, which he shared with the Defendants.

On March 4, 2015, Coffman's attorney sent the Defendants a letter of intent to lease the Premises.  It was Coffman's understanding that the Premises consisted of 1,784 square feet.  Coffman offered to pay a lease rate of $17 per square foot per year.  The offer included a demand for a fit-up allowance in the amount of $75,000.  There was also a demand that Coffman be permitted to use the walkways outside the Premises for a patio seating area and that Redding LLC, the owner of the Premises, pay for maintenance of an HVAC unit.  Coffman's offer was for a five-year lease term with an option to renew.  Coffman informed

---

[3] The Complaint lists this date as February 5, 2014.  [Record No. 12, p. 6]  Again, this appears to be incorrect since Plaintiff's first contact with Defendants reportedly was in November 2014.

the Defendants that he wanted to take possession of the property on or before April 1, 2015. He requested a response before the close of business March 11.

When Coffman did not receive a response by March 11, his attorney began telephoning Kemper and Smith. On March 24, 2015, Smith responded, requesting additional information concerning Coffman's business format, experience, and financing. Smith did not indicate that the offered price per square foot or the requested fit-up allowance was unreasonable or would not be considered. The same day the information was requested, Coffman's attorney provided Defendants with the information, which indicated that Coffman had extensive business experience and was fifty-percent owner of a successful clothing boutique. The Defendants were also informed that Coffman had obtained the commitment of private investors who had agreed to provide up to $200,000 in capital. Additionally, Coffman believed the total cost for the fit-up would be $150,000. He planned to contribute $75,000 toward the improvements and believed the arrangement would benefit the property owner. After speaking with the Defendants on March 24, Coffman's attorney requested a prompt response, as Coffman needed to consider other options if necessary.

On March 29, 2015, Smith responded by e-mail. Coffman claims the Defendants had not quoted specific numbers prior to this correspondence. Smith wrote:

> The terms initially proposed are significantly different than the quoted rents of mid $20's + NNN's in the $4-5 psf range with an anticipated tenant improvement allowance of +/- $10 psf. . . . Unfortunately our leasing push has been a bit ahead of the redevelopment details but that is quickly changing. . . . [W]e will continue to run the point on this deal until a lease is executed. Hopefully we will have the opportunity to start working through the deal points via email this week but if not we will definitely connect on Monday, April 6th.

On April 2, Coffman's attorney responded to Smith's email of March 29, stating that "the timeline for redevelopment was not an impediment to Redding LLC, the owner of the premises, responding to and negotiating a letter of intent with another tenant, who, upon information and belief was Caucasian or non-African American." Coffman's attorney concluded by stating:

> We submitted an offer a month ago, and have not even heard back with a proposed counter-offer. Again, this is highly unusual. I wonder whether Mr. Coffman's offer was substantially different than that accepted from the other tenant? We were never given a proposed range for tenant improvement, and this is the first I have heard that the owner was contemplating something in the range of $20/ sq. ft. . . . [W]e are willing to negotiate, but negotiation must begin with a counter-offer from the owner. . . . A month later with no response from the property owner makes it appear to me that something else is at play here, and I hope that is not the case.

The parties thereafter exchanged multiple phone calls, but the Defendants did not make a counteroffer or otherwise respond to Coffman's offer to lease.

On May 15, 2015, Coffman's attorney sent the Defendants a renewed and final letter expressing Coffman's offer to lease the premises. The letter contained the same terms as the original offer. Further, it informed the Defendants that if they did not move forward with negotiation of a lease for the premises by May 20, 2015, it would cause Coffman to breach his contract with his private investors, resulting in a loss of the $200,000 that had been pledged to him. The letter concluded:

> As the property remains open and for lease, I can assume that no higher offers have been made. As you know, my client is African American. Because there is no legitimate explanation for the course of events outlined above, I believe he has been discriminated against on the basis of race throughout this process. Discrimination in the leasing of commercial property is illegal and actionable.

Coffman did not receive a response from the Defendants.

Coffman alleges that the Defendants refused to rent and to negotiate the lease of the Premises to him because he is African American. Accordingly, he claims that the Defendants have violated federal laws protecting individuals' rights to make contracts and obtain real property. 42 U.S.C. §§ 1981, 1982. He also claims that Defendants have violated the Kentucky Civil Rights Act, KRS § 344.360, as well as state common law, causing him to lose the support of his private investors.

In support of his claims, Coffman alleges that "upon information and belief," the Defendants negotiated and accepted offers to lease from non-African American tenants who initially offered prices per square foot in the same range as those offered by Coffman. [Record No. 12, pp. 12–13] Further, there is a Great Clips hair salon operating in one of the storefronts at 435 Redding. *Id.* at 13. "Upon information and belief," he alleges, the owner of the salon is non-African American and the price paid per square foot by this tenant is not materially greater than that offered by Coffman. *Id.*

**II.**

When evaluating a motion to dismiss under Rule 12(b)(6), the court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). While a complaint need not contain detailed factual allegations, a plaintiff must provide more than mere labels and conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. While plaintiffs are not required to plead

-5-

facts showing that the defendant is likely to be responsible for the harm alleged, plaintiffs must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

### III.

**A. Alleged Violations of 42 U.S.C. §§ 1981, 1982 and the Kentucky Civil Rights Act**

In order to survive the Defendants' motion to dismiss, Coffman must have pled sufficient facts to permit the Court to reasonably infer that Defendants discriminated against Coffman based on his race. *See Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012). While the factual portion of Coffman's Complaint is in excess of fifty paragraphs, Coffman actually makes three distinct allegations that the Defendants treated him differently than a tenant or potential tenant who was not African American. First, he claims that Defendants refused to engage in lease negotiations with him, but told him "there was already a signed letter of intent for another space in the Centre." [Record No. 12, p. 5] Coffman believed that the letter of intent was from a Caucasian or non-African American individual. *Id.* Second, "upon information and belief," Coffman claims that the Defendants negotiated and accepted lease offers from non-African American tenants who initially offered prices per square foot in the same range as those offered by Coffman. *Id.* at p. 13. Third, "upon information and belief," he claims that a Great Clips hair salon located at 435 Redding is owned by a non-African American individual who, he believes, pays a price per square foot that is not materially greater than that offered by Coffman. *Id.*

Section 1981 prohibits racial discrimination in the making and enforcing of contracts involving both public and private actors. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001). Section 1982 prohibits racial discrimination relating to real property

-6-

transactions. *See Moniz v.* Cox, 512 F. App'x 495, 501 (6th Cir. 2013). Courts have long interpreted the provisions in tandem based on their "common language, origin, and purposes." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 448 (2008). A successful claim for a violation of these statutes requires proof of intentional discrimination, *see Moniz*, 512 F. App'x at 501, which can be established by direct or circumstantial evidence. *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). Direct evidence of discrimination, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the [defendant's] actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). Circumstantial evidence, however, does not establish discriminatory animus on its own, but allows the factfinder to draw a reasonable inference that discrimination occurred. *Id.* Coffman fails to plead any facts constituting direct evidence of race discrimination, so the Court focuses its inquiry on whether Coffman has alleged sufficient facts to go forward with a circumstantial case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 1973); *Mencer v. Princeton Square Apts.,* 228 F.3d 631, 634–35 (6th Cir. 2000) (applying the *McDonnell Douglas* burden-shifting framework to claims brought under §§ 1981 and 1982).

The Defendants argue that Coffman's claims must be dismissed because they are not supported by facts but by Coffman's unsubstantiated beliefs. The Sixth Circuit has provided clear guidance with respect to allegations that are based solely upon a plaintiff's "information and belief." In *16630 Southfield Limited Partnership v. Flagstar Bank*, 727 F.3d 502 (6th Cir. 2013), the plaintiffs claimed, "upon information and belief," that Flagstar Bank had given more favorable treatment to customers who were not of Iraqi origin. *Id.* at 506. The plaintiffs did not identify any specific customers that had been treated more

favorably, but alleged that the bank provided refinancing to "non-Iraqi" customers "where the debt to equity ratio [was] significantly less" than that of the plaintiffs'. *Id.* Affirming the district court's dismissal, the Sixth Circuit noted that, "these are precisely the kinds of conclusory allegations that *Iqbal* and *Twombly* condemned and thus told us to ignore when evaluating a complaint's sufficiency." *Id.*

Similarly, in *Han v. University of Dayton*, 541 F. App'x 622, 626–27 (6th Cir. 2013), the court found that the plaintiff failed to allege sufficient factual content to survive the defendant's motion to dismiss. When Han, an Asian male, was not rehired for his position as a non-tenured professor, he brought an action under § 1981 alleging race discrimination. Like Coffman, Han pled his own race and alleged that the defendant had taken adverse actions against him. He also alleged that a white male was hired to take on part of his teaching duties. The court concluded that, without more, the allegations were insufficient to create a plausible inference that the University's failure to rehire him was because of his race. *Han*, 541 F. App'x at 627. *See also Nali v. Ekman*, 355 F. App'x 909, 912–13 (6th Cir. 2009) (dismissal under Rule 12(b)(6) appropriate where prisoner alleged he was disciplined for discriminatory reasons but had no supporting facts that prisoners not disciplined were similarly situated and of a different race).

The Sixth Circuit discussed the issue more recently in *In re Darvocet, Darvon, & Propoxyphene Products Liability Litigation*, 756 F.3d 917 (6th Cir. 2014). In affirming this court's rejection of the plaintiffs' "information-and-belief" pleading, the Sixth Circuit explained, "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *Id.* at 931. The court acknowledged, but did not expressly adopt, an exception to the general rule against "information-and-belief" pleading. *Id.* (citing

-8-

*Arista Records, LLC v. Doe* 3, 604 F.3d 110, 120 (2d Cir. 2010)). The exception provides that such pleading is permissible under *Iqbal* and *Twombly* when "the facts are peculiarly within the possession of the defendant." *Arista Records, LLC*, 604 F.3d at 120, s*ee also Evans v. Armenta*, 134 F.Supp.3d 1052, 1058–60 (E.D. Ky. 2015). Assuming that the exception recognized in *Arista Records, LLC*, 604 F.3d 110 is available, Coffman does not allege that the information needed to flesh out his Amended Complaint is within the exclusive control of the Defendants. The Court recognizes that plaintiffs are not required to provide facts establishing a prima facie at the pleading stage, *see Lindsay v. Yates*, 498 F.3d 434, 439 (6th Cir. 2007), but there must be sufficient evidence to push a plaintiff's claim across the line from possible to plausible. Like the plaintiffs in *Flagstar Bank* and *Han*, Coffman has failed to provide a sufficient factual basis to do so with respect to his Section 1981 and 1982 claims. Accordingly, these claims will be dismissed.

The Kentucky Civil Rights Act's "unlawful housing practices" provision makes it unlawful to refuse to sell, lease, or to otherwise deny real property to any person because of race. KRS § 344.360. The Defendants have moved to dismiss Coffman's KCRA claim, arguing that § 344.360 applies to housing and not to commercial property. The Defendants' interpretation is supported by the statutory text and dearth of applicable case law. *See Lexington-Fayette Urban Cnty. Human Rights Comm'n v. Metro Mgmt., Inc.*, No. 2002-CA-1234-MR, 2003 WL 22271567, at *4 (Ky. Ct. App. Oct. 3, 2003) (federal courts' interpretation of "virtually identical" Fair Housing Act, 42 U.S.C. § 3604 is persuasive); *see also Shaikh v. City of Chicago*, No. 00-C-4235, 2001 WL 123784, at *3 (N.D. Ill. Feb. 13, 2001) (sale of commercial property to a protected class member may invoke the Fair Housing Act, but only if the property constitutes a "dwelling"). The Court need not reach

that issue, however.  Because Coffman failed to plead facts stating a plausible claim that Defendants discriminated against him based on his race, this claim also will be dismissed.

## B. Alleged Tortious Interference With Contractual Relations/Prospective Business Advantage

Coffman alleges that he had a contract with investors who had committed to providing "up to $200,000" in capital.  [Record No. 12, p. 17]  He informed the Defendants of the $200,000 investment through correspondence in March and May of 2015.  *Id.*  Coffman claims that the same investors had promised to loan him $400,000, but there is no indication that he informed the Defendants of the loan.  Coffman advised the Defendants that if they did not respond to his offer to lease on or before May 20, 2015, he would be unable to meet the terms of his agreement with his investors and would lose the $200,000.  *Id.* at pp. 17–18.

Kentucky law recognizes an action for intentional interference with an existing contract, as set forth in the Restatement (Second) of Torts § 766 (1979).  This section states:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 533 (Ky. Ct. App. 2005).  To state a successful claim, the plaintiff must identify "malice or some significantly wrongful conduct." *Id.* at 534.

Tortious interference with a prospective business advantage requires a plaintiff to prove: (1) the existence of a valid business relationship or expectancy; (2) that the defendant was aware of this relationship or expectancy; (3) that the defendant intentionally interfered;

(4) that the motive behind the interference was improper; (5) causation; and (6) special damages. *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky. Ct. App. 2012).

Assuming that Coffman has otherwise sufficiently pled the elements of these claims, he has not provided am adequate basis for inferring that Defendants acted with malice or an improper motive. Coffman alleges that Defendants' motive was racial discrimination but, as discussed previously, he has offered only speculation and his own subjective beliefs. There are many innocent explanations for Defendants' decision not to rent the Premises. While the Court realizes that the pleading stage is not the time to ferret out Defendants' true motive, *see Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011), Coffman must at least raise a reasonable inference that an improper motive influenced the Defendants' decision. *See Keys*, 684 F.3d at 608. He has failed to do so. Accordingly, these claims will be dismissed.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The motion to dismiss of Defendant 435 Redding, LLC [Record No. 17], is **GRANTED.**

2. The motion to dismiss of Defendants Isaac Commercial Properties, Inc., Jim Kemper (Individually and as Agent of Isaac Commercial Properties, Inc.), and Paul Ray Smith (Individually and as Agent of Isaac Commercial Properties, Inc.) [Record No. 19], is **GRANTED.**

3. Plaintiff's claims are **DISMISSED**, with prejudice.

This 19th day of May, 2016.



Signed By:
*Danny C. Reeves* DCR
United States District Judge